UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DeMARREA McCOY-GORDON,<br><br>    Plaintiff,<br><br>v.<br><br>M. COTA, et al.,<br><br>    Defendants. | Case No. 1:19-cv-01669-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

    DeMarrea McCoy-Gordon ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on November 26, 2019. (ECF No. 1). That complaint is before this Court for screening.

    For the following reasons, the Court recommends that Plaintiff's complaint be dismissed for failure to state a claim.

    Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

**I.    SCREENING REQUIREMENT**

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1

The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seek monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 13), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff generally alleges that Defendants M. Cota and C. Sherman retaliated against Plaintiff's exercise of his First Amendment rights by subjecting him to numerous fabricated write-ups, a cell search, and a transfer.

On or around January 25, 2019, after receiving legal mail, Defendant M. Cota, in front of Defendant C. Sherman, asked Plaintiff why he received so much legal mail. Plaintiff

responded, "my rights were violated at Pelican Bay State Prison and I am filing the necessary paperwork." Defendant M. Cota replied, "that's snitching." Plaintiff walked away to avoid a negative interaction.

After this interaction, Plaintiff was subjected to numerous retaliatory acts including four write-ups in one week by Defendants Cota and Sherman, a disrespectful cell search that resulting in Plaintiff's property and legal paperwork being scattered on the cell floor, and a transfer. Before this time, Plaintiff was discipline free for seven months.

On February 2, 2019, one week after the interaction where Defendant M. Cota stated "that's snitching," Defendant M. Cota wrote Plaintiff up for "Disrespect with Potential for Violence/Disruption." Defendant M. Cota alleged that while she was conducting count, she passed cell 228 and heard someone yell "don't listen to that fat bitch." Plaintiff was blamed for this, but Defendant M. Cota does not allege what could have influenced such a comment, and instead alleges that it was just blurted out spontaneously for no apparent reason.

Later that evening, on February 2, 2019, Defendant M. Cota called numerous officers to Plaintiff's cell as a scare tactic to get him to submit to a cell search. Plaintiff and his cellmate complied with the cell search, which Plaintiff alleges was retaliatory, after six other officers were called to be involved. After the cell search was conducted, Plaintiff observed that only his property was tampered with and disrespected, with everything being thrown on the floor.

On February 7, 2019, Plaintiff received a second write-up for disobeying a direct order by Defendant M. Cota. Defendant M. Cota stated that Plaintiff refused to take down his window cover. This was false. In fact, Plaintiff was in the middle of using the restroom and had covered the window for privacy, knowing that female staff were present. When Defendant M. Cota asked him to remove the covering, Plaintiff pulled it halfway down to enable Defendant M. Cota to make eye contact with both inmates so she could confirm that they were both in the cell. If Defendant M. Cota's allegation was true, then she failed to take appropriate measures to verify both inmates' safety, which is a violation of proper CDCR protocol.

On February 10, 2019, Plaintiff received two write-ups, one from Defendant M. Cota and one from Defendant C. Sherman. Both write-ups allege "Threatening Great Bodily Injury

or Death." In Defendant M. Cota's write-up, she alleges that Plaintiff said "I'm tired of your partner targeting me. My issue is not with you, it's with him. Look, the next time I could out of his cell, if he fucks with me again, I'm going to risk it all." After Plaintiff confronted Defendant M. Cota, she twisted his words and framed him. This led to Defendant C. Sherman writing Plaintiff up for the same allegation and also adding the Plaintiff had threatened him previously that day. However, Defendant C. Sherman claimed he did not feel threatened by the first alleged threat until he looked at Plaintiff's file and discovered that Plaintiff had a previous write-up for "Battery on a Peace Officer," which he claimed caused him to fear for his safety all of a sudden. In reality, Defendants Cota and Sherman collaborated in the construction of a method to justify a transfer, and capitalized by Defendant Sherman ordering a separation, which mandated a transfer. Plaintiff is only 5'7" and 136lbs and is not intimidating at all.

This last write-up resulted in the transfer of Plaintiff to California State Prison Sacramento on March 19, 2019, after spending thirty-seven days in solitary confinement. In solitary confinement Plaintiff experienced psychological hardship, depression, anxiety attacks, helpless feelings, nightmares, and flashbacks based on similar negative encounters with prison officials in the past.

This transfer hindered him from completing his rehabilitation classes at Narcotics Anonymous and Anger Management. Plaintiff was arrested on narcotics-related charges and struggles with drug abuse and anger. Plaintiff was in classes to address these issues, but could not complete them due to the transfer.

Since that transfer, Plaintiff has been subjected to another retaliatory transfer, from California State Prison-Sacramento to California Substance Abuse Treatment Facility, due to Plaintiff and his cellmate having to defend themselves against five opposing inmates. Neither Plaintiff nor his cellmate had displayed or alleged any safety concerns. But being as they were both litigators against unjust conditions of prison officials, they were both transferred and the opposing five inmates were allowed to remain on the yard. This retaliatory transfer resulted in the loss of all of Plaintiff's property.

Furthermore, Plaintiff has lost a total of 60 days and received a referral to the District

4

Attorney for these frivolous write-ups, which extended his incarceration.

Plaintiff also wrote an appeal on Defendant Sherman, but it mysteriously disappeared.

### III. EVALUATION OF PLAINTIFF'S CLAIMS

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."

5

*Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B. Processing of Grievance**

Plaintiff alleges that his grievance against Defendant Sherman was not properly processed by the "CSP Administration." The Court notes that the "CSP Administration" is not named as a defendant in this action. The only named defendants are Cota and Sherman.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Plaintiff appears to be challenging the procedures he was afforded in the grievance process. However, Plaintiff does not connect the alleged failure to appropriately process his grievance to any named defendant. Moreover, even if he had, as discussed above, there is no liberty interest in the processing of grievances. Accordingly, these allegations fail to state a cognizable claim for violation of due process under the Fourteenth Amendment.[1]

---

[1] Plaintiff checked the box indicating that his claim is for "retaliation," but there are no factual allegations suggesting that his grievance was not processed for a retaliatory reason.

### C. Analysis of Plaintiff's Retaliation Claim

Plaintiff seeks to challenge write-ups and a transfer on the basis that they were done in retaliation for his exercising his First Amendment rights. The Court reviews some relevant legal standards implicated by these allegations.

The filing of a *false* rules violation report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citations omitted); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California … have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2) when the prisoner alleges that he was not afforded procedural due process in a proceeding concerning the false report. *See Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as

required in *Wolff v. McDonnell* are provided.").

A plaintiff may state a section 1983 claim for a violation of his First Amendment rights due to retaliation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Watson v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995), *overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes,* 408 F.3d at 567.

Here, Plaintiff has alleged that Defendants took adverse actions in retaliation for his exercise of his constitutional rights.

Plaintiff's sole connection between the adverse actions done by Defendants is the allegation that Defendant M. Cota asked him why he was receiving legal mail, Plaintiff responded "my rights were violated at Pelican Bay State Prison and I am filing the necessary paperwork," and M. Cota replied "that's snitching."

Plaintiff does not allege that any defendant, or anyone else, stated that they were taking any of these actions in retaliation for Plaintiff pursuing his legal rights. In fact, as to the write-ups, Plaintiff himself describes other events that precipitated each allegedly false write-up.

For the write-up on February 2, 2019, Plaintiff asserts that Defendant M. Cota issued this write up after she passed cell 228 and heard "someone" yell "don't listen to that fat bitch." Plaintiff then alleges "Plaintiff ended up the blame for this, but defendant M. Cota makes no

8

allegation of what could have influenced such a comment but rather claims that this alleged comment was blurted out spontaneously by Plaintiff for absolutely no apparent reason." In other words, Plaintiff concedes that M. Cota issued the write-up after hearing a derogatory remark, and he does not allege that he did not make the comment. These allegations establish that there was an independent basis for Defendant M. Cota's remark, and there are no allegations suggesting that Defendant M. Cota issued the write-up in retaliation because Plaintiff claimed that he filed paperwork about his rights being violated.

Similarly, as to the write-up about taking down a window covering, Plaintiff concedes that he had a window covering, and that he did not remove it when he was told to (although he claims it was valid because he was using the restroom and he did pull it halfway down to allow Defendant M. Cota a limited view). Again, these facts establish an independent basis for Defendant M. Cota's actions, and there are no allegations suggesting that Defendant M. Cota issued the write-up in retaliation because Plaintiff claimed that he filed paperwork about his rights being violated.

Plaintiff also contends that Defendant M. Cota twisted his words when alleging that he had stated "I'm tired of your partner targeting me. My issue is not with you it's with him. Look the next time I come out of this cell, if he fucks with me again I'm going to risk it all." Yet, even Plaintiff's version of events shows that Plaintiff said something to M. Cota that led to her writing him up for these words, and there is no indication that it was purely in retaliation for Plaintiff exercising his legal rights.

Moreover, Plaintiff's allegations about being in solitary confinement and being transferred from another prison after fighting with inmates are not tied in any way to Defendants.

The Court thus recommends dismissing Plaintiff's complaint for failure to state a claim because Plaintiff's facts, even if true, do not establish that Defendants acted in retaliation.

Even if Plaintiff had pled facts that more directly tie Defendants' actions to the allegedly adverse actions, there would be significant legal hurdles to Plaintiff challenging those decisions, especially the prison's disciplinary findings and transfers.

Based on the legal standards described above, Plaintiff only has a claim for retaliatory filing of charges if those charges were false. This Court has not located any authority allowing a Plaintiff to claim a violation of his First Amendment rights for filing *true* disciplinary charges. Here, Plaintiff appears to have been found guilty of those charges. Plaintiff does not contest the procedures used to find him guilty. Generally, guilty findings in disciplinary proceedings are upheld if some evidence supports the findings. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (due process is satisfied if "some evidence" supports disciplinary decision).

Additionally, Plaintiff alleges that as a result of at least some of these disciplinary proceedings, he lost good time credits. Because plaintiff is challenging disciplinary convictions for which he was sanctioned with the loss of good conduct credit, which Plaintiff admits extended his incarceration, this action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. *Id.* at 486-487. The *Heck* bar preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of incarceration or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. *Muhammad v. Close*, 540 U.S. 749, 750-751 (2004). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

For all these reasons, the Court recommends that Plaintiff's complaint be dismissed for failure to state a claim.

**IV. CONCLUSION AND RECOMMENDATIONS**

The Court has screened the complaint and finds that it fails to state any cognizable claims for the reasons described in this order.

The Court does not recommend giving Plaintiff leave to amend.  Plaintiff has provided a very detailed recitation of the facts and clearly alleged his legal claim.  However, the facts alleged, even taken as true and construed in Plaintiff's favor, do not state a claim under the applicable legal standards.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim.
2. The Clerk of the Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**April 10, 2020**__       /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE